SOUTH OMAHA NATIONAL BANK, APPELLEE, V. J. O. CHASE ET AL., APPELLANTS.

[FILED SEPTEMBER 24, 1890.]

1. **Supreme Court:** OBJECTIONS NOT RAISED BELOW. The objection that the plaintiff, which sought to establish a lien upon certain personal property in the hands of D. as the property of C., a judgment debtor of the plaintiff, was, as to the property, only a general creditor of C., it not having attached the same, the question not having been raised in the trial court; *held*, that it would not be heard when raised for the first time, in this court on appeal.

2. **Chattel Mortgages:** FRAUD. In view of the finding and judgment of the trial court, the evidence of the defendant D. *held* to be insufficient to remove the presumption of fraud cast upon the chattel mortgage executed by C. to D., by the provisions of section 11 of chapter 32, Comp. Stats.

3. **Construction:** THE STIPULATION between the parties, set out at length in the opinion, *held* to recognize the right of D. to bid off any property at the sale the same as any bidder, and that it was the money represented by such bid, and not the property sold, that he was required to hold upon the same terms that the proceeds of the sale were to be held by the bank.

4. **The decree** modified accordingly.

APPEAL from the district court for Fillmore county. Heard below before MORRIS, J.

*Maule & Sloan,* and *Harwood, Ames & Kelly,* for appellants, cited : *Tootle v. Dunn,* 6 Neb., 93 ; *Parmer v. Keith,* 16 Id., 91 ; *Hinde's Lessees v. Longworth,* 11 Wheat. [U. S.], 213* ; *Stoll v. Gregg,* 23 Neb., 231 ; *Stoddard v. McLane,* 56 Mich., 11 ; *Newman v. Willetts,* 52 Ill., 98 ; *McKibben v. Barton,* 1 Mich., 213 ; *Jones v. Green,* 1 Wall. [U. S.], 331 ; *Weil v. Lankins,* 3 Neb., 385 ; *McElwain v. Willis,* 9 Wend. [N. Y.], 549 ; *Chicago Dock Co. v. Mc-Kenzie,* 49 Ill., 289 ; *Eiseley v. Malchow,* 9 Neb., 174 ; *Rickards v. Cunningham,* 10 Id., 417 ; *Cahill v. Bigelow,* 18 Pick. [Mass.], 369 ; *Hall v. Soule,* 11 Mich., 494 ; *Bohannon v. Pace,* 6 Dana [Ky.], 194 ; *Garrett v. Garrett,* 27 Ala., 687 ; *Huffman v. Ackley,* 34 Mo., 277 ; *Houser v. Lamont,* 55 Pa. St., 311 ; *Beal v. Brown,* 13 Allen [Mass.], 114 ; *Standley v. Miles,* 36 Miss., 434 ; *Marden v. Babcock,* 2 Met. [Mass.], 99 ; *Emerson v. Slater,* 22 How. [U. S.], 28 ; *Clopper v. Poland,* 12 Neb., 69 ; *Nelson v. Boynton,* 3 Met. [Mass.], 396 ; *Fitzgerald v. Morrissey,* 14 Neb., 199 ; *Mills v. Brown,* 11 Ia., 314 ; *Mallory v. Gillett,* 21 N. Y., 412.

*Charles Offutt, contra,* cited : *Downie v. Ladd,* 22 Neb., 534 ; Maxwell, Pl. & Prac. [4th Ed.], 607 ; *Lounsbury v. Catron,* 8 Neb., 477 ; *Burnham v. Doolittle,* 14 Id., 217 ; *Carty v. Fenstemaker,* 14 O. St., 461 ; *Brashear v. West,* 7 Pet. [U. S.], 608 ; Drake, Attachment [4th Ed.], 453 ; *Burlingame v. Bell,* 16 Mass., 318 ; *Swett v. Brown,* 5 Pick. [Mass.], 178 ; 2 Wade, Attachments, 331, 333 ; *Smith v. Sands,* 17 Neb., 498 ; 2 Pomeroy, Eq. Juris., 745, 785 ; Wharton, Ev. [3d Ed.], 1014 ; *Clopper v. Poland,* 12 Neb., 70 ; *Nelson v. Boynton,* 3 Met. [Mass.], 396 ; *Fish v. Hutchinson,* 2 Wils. [Eng.], 94 ; *Jackson v. Rayner,* 12 Johns. [N. Y.], 291 ; *Robison v. Uhl,* 6 Neb., 328 ; *Uhl v. Robison,* 8 Id., 272 ; *Eiseley v. Malchow,* 9 Id., 180 ; *Lloyd v. Strobridge,* 10 Chicago Leg. News, 1 ; *Ely v. Ormsby,* 12 Barb. [N.Y.], 571 ; *Davis v. Caverly,* 120 Mass., 415 ; *Mallory v. Gillett,* 21 N. Y., 412 ; *Farley v. Cleve-*

*land,* 4 Cow. [N. Y.], 432; *Wills v. Brown,* 118 Mass., 138; *Case v. Citizens Bank,* 2 Woods [U. S.], 23; *Gatch v. Fitch,* 34 Fed. Rep. [U. S.], 566–70; *Irons v. Nat'l Bank,* 6 Bissell [U. S.], 301; *U. S. v. Knox,* 102 U. S. S. C. Rep., 422; Ball, Nat'l Bks., 231; *Kennedy v. Gibson,* 8 Wall. [U. S.], 506; *Hooker v. Hammill,* 7 Neb., 235; Wait, Fraud. Con., 223; *Seymour v. Wilson,* 19 N. Y., 418; *O'iver v. Moore,* 23 O. St., 479; *Starr v. Starr,* 1 O., 321; Bump, Fraud. Con., 76–100; *Gregory v. Whedon,* 8 Neb., 377.

COBB, CH. J.

1. The South Omaha National Bank was a creditor of Julius O. Chase and J. W. Walters, and obtained a judgment against them, in the district court of Douglas county, for the sum of $2,967.48, with costs. On the 3d day of November, 1888, an execution was issued upon said judgment to the sheriff of said county, which was on the 26th day of said month returned by said sheriff wholly unsatisfied, for the want of property whereon to levy the same.

2. On the 5th day of November, 1888, a transcript of said judgment was filed in the office of the clerk of the district court within and for the county of Fillmore, and docketed and indexed, that being the county in which the said Chase and Walters resided and still have their residences. On the last named date an execution was issued thereon to the sheriff of said county of Fillmore, and the same was by said sheriff afterwards, and before the return day thereof, by the said sheriff returned "No property found;" no part of said judgment having been paid, except the sum of $186.90, as of November 2, 1888, and the further sum of $300.15 as of January, 1889, and the costs and increased costs on said judgment have amounted to $75, and the remainder of said judgment remained wholly due and unpaid.

3. On the 21st day of March, 1889, the plaintiff caused another alias execution to issue on said judgment, directed to the sheriff of Fillmore county, and the same was by said sheriff, before the return day thereof, returned "No property found."

4. On the 15th day of March, 1889, the plaintiff caused a precept to be issued by the clerk of the district court of Fillmore county, under the seal thereof, directed to the sheriff of said county, commanding him to notify William H. Cooksey, Julius O. Chase, William S. Hogaboom, Hattie E. Chase, O. M. Druse, and J. W. Walters, defendants, that they have been sued by the South Omaha National Bank, plaintiff, in the district court of the fifth judicial district in and for said county of Fillmore, and that unless they answer on or before the 15th day of April, 1889, the petition of said South Omaha National Bank, filed against them in the clerk's office of said court, such petition will be taken as true and judgment rendered accordingly. Said sheriff was ordered to make due return of said summons on or before the 25th day of March, 1889. Said precept was indorsed as follows: "The relief sought is equitable, and on attachment by garnishment after judgment, and return of no property on execution, in the event of failure to answer, the plaintiff will take judgment for $2,967.48, with 10 per cent interest from September 17, 1888, until paid, credited by $186.90 paid November 2, 1888, and $300.15 paid January 12, 1889, and, in addition, for $53.73, increased cost and the costs of this action," and was returned by the said sheriff personally served on the said William S. Hogaboom, Harriet E. Chase, O. M. Druse, J. W. Walters, William H. Cooksey, and the said Julius O. Chase, by leaving a certified copy at his usual place of residence. And on the 25th day of March, 1889, the said bank also caused another precept to be issued by the clerk of said court, and under the seal thereof, directed to the sheriff of said county, in and by which said sheriff was

commanded to notify O. M. Druse, Harriet E. Chase, and William S. Hogaboom to appear in the district court of Fillmore county on the 28th day of May, 1889, to answer under oath questions touching the goods and chattels, rights and credits of Julius O. Chase in their possession or under their control, which precept was indorsed the same as the one hereinbefore set out, and was returned by the sheriff of said county as personally served by copy on each of O. M. Druse, William S. Hogaboom, and Harriet E. Chase, and also that he served upon each of said persons a written notice to appear on the 28th day of May, 1889, and answer as in said precept required.

On the 28th day of May, 1889, the said plaintiff filed its amended petition in the said district court of Fillmore county, in and by which it set out and stated the several facts and matters and things which are stated in the three first paragraphs of this opinion, and in addition thereto the following, in substance: That the defendants Julius O. Chase and J. W. Walters, and each of them, are wholly insolvent and have no property whatever liable to execution to satisfy the same; but, as plaintiff believes, they have moneys, rights, credits, and equitable interests in property, both real and personal, and which they, and each of them, unjustly refuse to apply in satisfaction of plaintiff's judgment.

That on the 11th day of September, 1888, the defendant Julius O. Chase made a certain chattel mortgage of that date, which, on the 12th day of the same month, was filed in the office of the clerk of Fillmore county, in and by which he undertook to mortgage to his co-defendant, O. M. Druse, in order to secure an alleged indebtedness of $3,600, payable on September 11, 1889, the following described personal property, to-wit: Sixty-five thoroughbred Hereford cows, bulls, and calves; twenty colts; one-half interest in one Cleveland bay stallion, Coachman 2d; one black stallion named Bertie McGregor; one sorrel gelding, Charlie.

That on the 6th day of December, 1888, the defendant Julius O. Chase made a certain chattel mortgage of that date, which was, on the 7th day of the same month, filed in the county clerk's office of said county, in and by which he undertook to mortgage to his co-defendant O. M. Druse, aforesaid, in order to secure an alleged indebtedness of $1,500, payable December 6, 1889, the following described property, to-wit: One black stallion named "Bertie McGregor;" one sorrel trotting horse named "Charlie;" one light bay mare; one black mare; twenty sucking colts; one-half interest in one Cleveland bay stallion, "Coachman 2d;" one Hereford bull, "Grove 4th A. 13733; sixteen head of Hereford calves; one top buggy; seven sets harness; one economizer, ten-horse power engine and boiler.

That the two above described mortgages, and each of them, were made without valuable consideration, and the defendant Julius O. Chase was not then indebted to the defendant Druse in the sum of $3,600 and $1,500, or any part of either of said sums; that said mortgages, and each of them, were made with the fraudulent intent to cheat, hinder, and delay the creditors of the said Julius O. Chase, and especially the plaintiff, and were absolutely null and void, and the defendant O. M. Druse did not, on the execution of said mortgage or any time thereafter, take possession of said mortgaged property, or any part thereof, until a few days next before the date of the presentation of said petition, when the said Druse fraudulently and unlawfully took forcible possession of said property.

(Several paragraphs in said amended petition are devoted to allegations involving charges against one Edmund McIntire, in connection with said Druse, but, as these allegations and claims and charges against the said McIntire were withdrawn and dismissed upon the trial, said paragraphs are omitted here.)

That said O. M. Druse has the property as above described in his possession, and claims the same as his own,

and refuses to permit the plaintiff to subject any part thereof to the satisfaction of its said judgment; that the same in fact and in equity belongs to the defendant Julius O. Chase, but cannot be sold under execution, because no one will bid for or buy the same, on account of the claim and possession of the defendant O. M. Druse thereof; that the plaintiff has good reason to and does believe that the said defendants, and each of them have property and are indebted to the judgment debtors, Julius O. Chase and J. W. Walters, in addition to the property in said petition before described, but that plaintiff is unable to give a more accurate description thereof; with prayer that the defendants O. M. Druse, Julius O. Chase, and J. W. Walters, and each of them, be required to answer, and disclose upon their several corporal oaths, what money, property, rights, credits, chattels, or other equitable interests, they, or either of them, have in their possession or under their control, belonging to the defendants Julius O. Chase and J. W. Walters, or either of them, or in which they, or either of them, have any right, title, or interest, legal or equitable, and that the same may by proper orders be subjected to the payment and satisfaction of the plaintiff's judgment aforesaid; that the said mortgages to the defendant, Druse, described in said petition, one dated September 11, 1888, and the other dated December 6, 1888, may be, each of them, held fraudulent, null, and void, and be canceled, set aside, and held for naught, and the property described and included in said mortgages as therein before named might be, each and every part thereof, adjudged the property of the defendant, Julius O. Chase, and liable for the satisfaction of the plaintiff's said judgment; that the defendants, and each of them, might be charged with whatever property, or legal or equitable interests in property, which they may have in their possession or under their control, in which the defendants, Julius O. Chase and J. W. Walters, or either of them, have any interest or claim, and for costs.

This petition was sworn to in positive form, by Chas. Offutt, as attorney for the plaintiff.

The defendant O. M. Druse made and filed his separate answer to said petition, in which he denied all of the allegations therein contained, except as to the corporate character of the plaintiff, and such allegations thereof as might be in his said answer thereafter admitted to be true. He alleged that the said Julius O. Chase was justly indebted to him in the sum of $3,500, and to secure said indebtedness, executed the mortgages mentioned in paragraphs four and five of the plaintiff's petition; that said mortgages were given in good faith and to secure a *bona fide* indebtedness; and that both of said mortgages were, immediately upon the execution thereof, filed in the office of the county clerk of Fillmore county; that there was then due the said defendant, from the said Julius O. Chase, on said indebtedness, the sum of $3,000; with prayer for judgment and costs.

The plaintiff replied to the answer of the defendant O. M. Druse, in which it denied that the defendant Julius O. Chase was justly or in anywise indebted to the defendant O. M. Druse in the sum of $3,500, or any other sum. It denied that, to secure said indebtedness, or any other indebtedness of the said Chase to the said Druse, the mortgages, or either of them, described in paragraphs four and five of the petition, were executed. It denied that said mortgages, or either of them, were given in good faith, or that they, or either of them, were given to secure *bona fide* existing indebtedness, and denied the answer generally.

On the 3d day of June, 1889, the plaintiff filed a supplemental petition, in which it alleged that after filing the original petition, to-wit, on the 16th day of March, 1889, the defendant O. M. Druse was about to sell a large portion of the chattels described in the original petition in foreclosure of said mortgages, dated September 11 and December 6, 1888, made by the defendant Julius O. Chase

to the defendant O. M. Druse, and had advertised the said property as provided by law, and the sheriff of Fillmore county, pending said chattel mortgage sale, had levied upon certain of said property, in satisfaction of state and county taxes; that then and there the plaintiff, being present by its attorney, made protest and objection to the said sale, or any part thereof taking place, whereupon the defendant O. M. Druse executed and delivered to the plaintiff a writing in words and figures as follows: "It is agreed that the property advertised for sale this day under chattel mortgage shall be sold as advertised by O. M. Druse and an account of each sale accurately kept, and that the proceeds, notes, and cash shall be deposited in the Capital National Bank at Lincoln, to remain there until the rights of the Omaha National Bank and O. M. Druse to each and every part thereof are finally determined and settled in suits in the Fillmore district court, which the undersigned agree to try at the coming May term of court. Said bank is not to pay out or dispose of any portion oɪ said money or notes without the consent of all the undersigned. Out of the proceeds the actual expenses of this sale shall be at once paid by O. M. Druse before deposit. Neither party concedes or waives any right by this agreement. Any property bid off by O. M. Druse shall be held by him in the same terms with the notes and cash aforesaid in bank." Signed by the South Omaha National Bank, by its attorney, and by O. M. Druse, and dated March 16, 1889. That thereupon the said defendant proceded with the said sale, and the following of said property was sold for the prices hereinafter named: (Here follows an itemized list of live stock and other chattels, together with the price at which each article was sold, followed by the allegation that shortly thereafter, to-wit, on the 26th day of April, 1889, the defendant O. M. Druse rendered to the plaintiff the following itemized statement of expenses incident to said sale, to-wit, tax, $151.39; constable's fee and expenses,

$24.80; printing, $15; metx (sic), $10; Druse for feed, $15; men for driving cattle in, $4.

That the defendant O. M. Druse received into his possession all the money aforesaid, amounting to the total sum of $130.75; that the said Druse received into his possession the joint note of the aforesaid * * * and * * * for $385; that the said Druse also bid off and took into his possession, of the aforesaid property, the following, that is to say: One bay mare; one horse, Charlie; one horse called Bertie McGregor; twelve colts, and four Hereford bulls, all of which he received, together with said cash and note, by virtue of the agreement thereinbefore set out (see copy); that since receiving the aforesaid property, the defendant Druse has retained the possession of all the said cash and the said note, except so much thereof as was used in paying the expenses and taxes aforesaid, and the defendant Druse, since said time, has sold and disposed of certain of the personal property so bid off by him, that is to say, the horse Bertie McGregor, for the sum of $600; whether any more, plaintiff is unable to state; that the defendant Druse acquired the possession of said property under and by virtue of the said written agreement, dated March 16, and that the same was included within the chattel mortgage made by defendant Chase to defendant Druse, as stated in the petition; that said mortgages, and each of them, were without any consideration made by the defendant Chase when he was insolvent, and when Druse knew him to be insolvent, and made by Chase with the intent to cheat, hinder, and defraud his creditors, and in fraud of their rights, and especially were they made to cheat and defraud the plaintiff, and which was well known to defendant Druse; with prayer for the relief prayed in the original petition, and that the defendant Druse may be compelled to account for all property bid in by him at the chattel mortgage sale, as stated, and to turn over to the plaintiff the amount of the consideration received by him

for any of said property which he may have sold since the 16th of March, 1889; that Druse in like manner may be charged with the amount of cash and notes received by him, as the proceeds of the chattel mortgage sale, and that an account may be taken between the plaintiff and the defendant Druse, under the agreement of March 16, 1889, as entered into, and for general relief.

The defendant Druse, in answer to the supplemental petition, admitted the first, second, and fourth paragraphs thereof, and in answer to the fifth paragraph stated that he sold the horse Bertie McGregor for $600, on time, and took a note or notes secured by mortgage.

There was a trial to the court, with findings that the judgment note of Hodges and Blanchard for $385, on deposit in the Capital National Bank at Lincoln, be delivered to the plaintiff to pass as a credit of that amount on its judgment debt of March 16, 1889, and that the remainder of the property enumerated, twelve colts, one bay mare, and four Hereford bulls, are the property of defendant J. O. Chase; and that the plaintiff has a lien thereon for the amount of its judgment debt, and that the same is liable to the satisfaction thereof; that the sheriff is ordered to sell said property, as upon executions at law, and bring the proceeds thereof into this court subject to the further order of the court, and a judgment for the plaintiff for the sum of $791.56, which was appealed to this court by the defendant Druse.

The third paragraph of appellant's brief is devoted to the proposition that neither the facts of the petition and supplemental petition, nor those proved on the trial, are sufficient to support the judgments, or, in the words of counsel, "support a creditor's bill." The ground of objection is two-fold: That the plaintiff made no levy of its writs of execution, or either of them, upon the chattels, the title to which it questions and seeks to have settled by its bill; that, in respect to such property, it is only a general cred-

itor of the defendant Chase, and that, under the adjudications of this court, and other courts, which it has followed, a plaintiff who is only a general creditor cannot maintain a creditor's suit. That this was the law, was well understood by the bank and its attorney, and for that reason it sought to give itself the character of an attachment creditor; but it is doubted that it carried its proceedings sufficiently far to avail itself of any resultant advantage, as it does not appear from the record that the defendant Druse, or any of the defendants, were ever called before the district court to make disclosures as garnishees; nor does it appear that the affidavit required as the foundation of proceedings in garnishment, either before or after execution, was made on behalf of the plaintiff. However, these observations are only made preliminary to the fact that the defendant Druse, whose rights only are involved in this appeal, seems to have waived all objection to the form of this action, and to all insufficiency in its inception, the nature of the remedy chosen by the plaintiff, indeed, everything, so far as the district court was concerned, and raises such objection only in the appellate court.

While it is not conceded that in a cause where the petition fails to state a cause of action the answer and defense of a party would waive such objection, yet that objection is not made here, much less in the court below, and especially as the point is not raised we will consider the petition as stating a cause of action; and therein will observe that in what respect these ancillary proceedings can be considered as helping it out is not perceived; but in view of the failure of defendant to make objection, or take any step in the trial court to test the sufficiency of plaintiff's proceedings, it will in this court, where the question is presented for the first time, be held that the point that the plaintiff was but a general creditor, and had obtained no special lien upon the chattels of J. O. Chase, does not arise.

In the case of *Shellenbarger v. Biser*, 5 Neb., 195, there was a principle involved akin to the present question, as to which this court, in the opinion by Mr. Justice MAXWELL, held that "a person claiming adversely to the title of the mortgagor, and prior to the execution of the mortgage, cannot properly be made a party, for the purpose of trying the validity of such adverse claim of title. But this rule does not exclude one who claims title, and, also, claims to hold a mortgage on the same premises, who submits his claims to the adjudication of the court, and asks that in case the court finds his title to the premises invalid, that he may have a decree for the amount due on the mortgage. These defenses are inconsistent, and, had a motion been made at the proper time, the defendant would have been compelled to elect on which he would rely. But the plaintiff joined issue with the defendant, denying the facts stated in his answer; and testimony has been taken by both parties, to establish the truth or falsity of the issues raised. It is therefore the duty of the court to consider all the questions at issue." This example was followed by *Lounsbury v. Catron*, 8 Neb., 469, and that of *Downey v. Ladd*, 22 Neb., 531, and is adhered to.

The following facts from the testimony of O. M. Druse appear from the bill of exceptions: In the year 1888, and for some time prior to that, J. O. Chase resided in Fairmont, Fillmore county, engaged in banking and breeding live stock. O. M. Druse resided in Lincoln, engaged in dealing in live stock, and was a shareholder in, and secretary of, the Lincoln Driving Park Association. They had been acquainted for five or six years, or longer. At this time Chase was the president, manager, and owner of a majority of the stock of the First National Bank at Fairmont. I quote directly from the testimony of Druse, as the shortest method of stating what is regarded as the facts in the case :

Q. Will you tell the arrangement and what occurred between you and Chase in regard to this land?

A. I was at Chase's place in June, 1886, and he told me he had a very fine piece of land, 240 acres, adjoining Fairmont on the southeast, and had been thinking of starting a horse ranch, but feared he had so much to handle that it was going to be a burden to undertake it, although he had an idea of running it if he could get some good man to take hold of it, and should like to have me. I remarked at the time that if I was able I would buy the place. He said that he would trade me the place if I had anything to trade for it. I said, "All I have is a little place here; my home, and my stock in the Driving Park." He asked what my home was worth, and I said, "I think about $3,000;" and he asked what the driving stock was worth, and I said from four to five thousand dollars. He said he would make a little inquiry about it and let me know. He went out and came back in a little while and said: "I will trade the farm for the stock in the Driving Park, and your home in South Lincoln; you can make the deed to the place out there, and you come to Fairmont and we will close the trade."

Q. What was said by him previously in regard to the deferred payment on the land?

A. That he would make the payment of that himself.

Q. Now at any of these conversations did he say anything about the bank?

A. No, sir, he never mentioned it; I made out the deed for the house and lot in South Lincoln; my wife had to sign the deed; I made the deed to J. O. Chase; I took it and went up to Fairmont, and he said, "We will take the deed and go up to Sloan's office and make out the papers." We went to Sloan's office, and Chase and I repeated the contract in agreement as near as we could to Sloan, and he drew up this contract (referring to defendant's Exhibit D); when I handed Chase the deed to the property in South Lincoln he looked at it and said, "I want you to make that deed to the bank;" so I put the deed in my

pocket and said I would make it to the bank when I got home, which I did, and sent it up there.

Q. Go right on, and tell what occurred in Sloan's office in regard to this contract.

A. When he mentioned bank, wanting the contract made to the bank, I said, Chase, this is a deal of ours, and not of the bank; I don't know anything about the bank; you are the man I had this deal with; he said, "I want to make this contract in the name of the bank." He agreed there that he owned pretty near all the stock in the bank, and that he had put some of the stock in the name of some parties to make them directors. He said that was all right, "I will see that these payments are made myself," and then I followed up by making the remark that "this is a deal between you and me."

Q. You signed this contract?

A. Yes, sir.

The contract referred to by the witness is as follows:

"This agreement, made this 6th day of July, 1886, by and between Marcella Druse and Otis M. Druse, her husband, of Lancaster county, Nebraska, parties of the first part, and The First National Bank of Fairmont, party of the second part, witnesseth: That for and in consideration of the mutual covenants and agreements hereinafter contained, The First National Bank agrees to assign, and by these presents does assign, to the said first parties a contract for the sale of the following described real estate, situate in Fillmore county, Nebraska, to-wit: The N. W. ¼ of sec. 32, Tp. 8, range 2 W. of the 6th P. M.; and also the N. ½ of the S. W. ¼ of said section, township, and range. The said contract of sale being described as follows: A contract from H. G. Bliss and M. E. Bliss, his wife, of Fillmore county, Nebraska, to Charles Warner, dated December 20, 1884, by which the said H. G. Bliss and wife agree to sell and convey the above described lands to Charles Warner, and which said contract was duly assigned

to The First National Bank of Fairmont by the said Charles Warner. And the said First National Bank covenants and agrees that at the time mentioned in said contract for the last payment on the same, to wit, January 1, 1888, that the said bank will make, execute, and deliver to the said first parties a good and sufficient warranty deed to the real estate hereinbefore described. And the said first parties, in consideration of the assignment of said contract of sale, agree to make, execute, and deliver to the said bank a good and sufficient warranty deed to the following real estate, to-wit: Lot number 5, in block 27, in South Lincoln, according to the plat on file in the clerk's office of Lancaster county, Nebraska, together with all the improvements thereon; and the said first parties agree to assign, and by these presents do assign, to the said bank one share, to-wit, No. 9 of the Lincoln Driving Park Company of Lincoln, Nebraska, said park containing 53 acres, more or less, the title to seventeen acres and a fractional part of an acre off the west side of said park being now in litigation. The said first parties agree that said litigation shall be conducted without expense to the said second party. It is further agreed that if the title to said seventeen acres and fractional part of an acre shall fail, then and in that case the said first parties shall pay the said second party the sum of $1,800; and it is further agreed that if the litigation concerning the title to said part of the said park is not determined at the time a deed should be made under this agreement, then the first parties agree to make, execute, and deliver to the said second party a mortgage on the said real estate conveyed by the said party of the second part to the said first parties for the sum of $1,800, said mortgage to be void if the title to said lands now in litigation shall be adjudged on final hearing to be in the said company; or if the said first parties or the said company shall perfect the title in said company without expense to the said bank, it is further agreed that the said second party is

to make the payments provided for in the said contract of sale hereinbefore described. That the said first parties are to have immediate possession of said land therein described, and the said first party is to pay the taxes which shall accrue after the year 1885, and that the said first party shall make, execute, and deliver the deed hereinbefore described to said lot number 5 upon the signing of this agreement.

"In witness whereof, the parties hereto have signed the ·same; this 13th day of July, 1886."

Signed by Marcella Druse and Otis M. Druse, and J. O. Chase, president, and witnessed by W. C. Sloan.

The witness Druse further stated that he never had any conversation with any other person connected with the bank, in regard to the trade, or as to making back payments on the farm. There occurs then a portion of his testimony which either by the witness is indefinitely stated, or is unintelligently reported, but so far as understood the circumstances mentioned occurred about the date of the first mortgage of Chase to Druse. The witness states that Chase had been to Omaha and returned to Lincoln and informed witness that Irwin had been up to some bad business, had given note against notes against the bank, bonding the bank, and that he knew nothing about it, and had to take that up; that after meeting this unexpected matter, he would like to get some paper discounted, and advised with witness as to where he could probably get that done. Witness suggested to him to apply to the Capital National Bank, and accompanied him there. After some negotiation, Chase succeeded in making a loan. Witness then said to Chase: "J. O., you understand, of course, all I have got to raise money on is my home, and I dread to give that up, and I always trusted you, and have confidence in your integrity, and I want you to make me whole in this matter." He further stated that previously he had heard through one of the banks that the Chases were getting in rather bad shape, and their paper

was being hawked about at less than its value; that witness told Chase what he had heard, deeming it a friendly act, and believing that there was no truth in the report; that he believed Chase was worth a hundred thousand dollars over his liabilities; and thereupon asked Chase to secure him, telling him, "if this thing went on, he didn't know where it would go to, and wanted him to secure witness in some way." Witness went out to Fairmont and to Chase's house, in a few days, and Chase there said to him, "Druse, I will make a mortgage that will make it all right, so you will be in no danger. I don't want you to put it on record," and would have Uncle John Burnett come and take possession of the mortgaged property. The Uncle John Burnett referred to was the hired superintendent of Chase's farm. So far as I understand the witness, he means to say that the chattel mortgage for consideration of $5,500, securing two notes, one for $2,500, due July 1, 1889, and the other for $3,000, due July 15, 1889, both dated June 18, 1888, witnessed by John Burnett, was, at this point of time, executed and delivered to witness, and that the mortgage and the property therein described were placed in Burnett's possession as custodian. Druse stated that he looked over the property, and while he did not find all of it on hand, he saw the principal part, and told Burnett that he would hold him responsible for the property when he should call for it. He also stated that that mortgage was given "to secure the payment due on the contract for a loan due, or to become due, for the deferred payments of the contract." The witness is here supposed to refer to the chattel mortgage mentioned as executed by J. O. Chase to O. M. Druse, June 18, 1888, by which was mortgaged thirty-five head of thoroughbred calves, Hereford and Holstein; two head of thoroughbred Hereford bulls; twelve head of colts from one to four months old; one hundred head of hogs and pigs; one-half interest in the Cleveland bay stallion,

Coachman 2d; one black horse, "Bertie McGregor"; all the farm machinery in use on said farm, with wagons and harness, and hay and grain growing on certain land; one gelding, "Charley;" two top buggies; one two-seated buggy; one set double harness; one Holstein bull, "Neptune;" four brood mares, and other live stock illegibly described. This mortgage purports to have been given to secure the payment of one note for $2,500, due July 1, 1889, and one for $3,000, due July 15, 1889. No notes are attached to the mortgage, and it is accompanied by the receipt of John Burnett, of the possession and control of the property described as inventoried for Druse from June 27, 1888.

Hereupon the witness was shown by his counsel, and told to examine, a mortgage which appears in the bill of exceptions as defendant's Exhibit E; also a note attached to the same, and was asked to state the facts under which the note and mortgage were given, to which he answered, that "during the state fair in September last Chase came to him with that mortgage, and said 'he had changed the security somewhat to make it better for me, and wanted to give me this note and mortgage for security.' I was then very busy taking care of the stuff on the grounds, and said I will look it over and let you know. He said 'he was going back on the train,' and I did not see him again for a few days. After the fair I went up to the farm and saw him, and it having become evident to me that he would not pay the deferred payment on the contract, I said, 'J. O., I cannot raise that money except to borrow it on the farm, or sell my home, and the way matters are I could not sell my home, and if I borrowed money I would have to pay interest for five years, and it would amount to more than $3,000, and that I wanted him to put this thing in shape so there would be no trouble; that it ought to have been straightened up before, but now I wanted it fixed.' He then said that 'he would make another mortgage as additional security.'"

The Exhibit E, is a chattel mortgage by J. O. Chase to O. M. Druse, dated September 11, 1888, describing as property mortgaged, sixty-five head of thoroughbred Hereford cattle, consisting of bulls, cows, and calves; twenty head of colts from four months to three years old; one-half interest in Cleveland bay stallion, "Coachman 2d;" one trotting bred stallion, "Bertie McGregor"; one sorrel gelding, "Charley;" one buggy; seven sets of harness. The cattle and colts subject to a mortgage to the Omaha National Bank. This exhibit was given to secure a note of $3,600, due September 11, 1889, and is accompanied by the same, made by J. O. Chase to O. M. Druse, or order.

The witness was shown Exhibits G and H, and was asked the following: ·

Q. Are all these notes and mortgages given to secure the same indebtedness?

A. Yes, sir.

Q. Did you finally take possession of the property that was left?

A. I took possession of what was left.

Q. Is this a correct description of what was left?

A. Yes, sir.

Q. And is this the note and mortgage you proceeded to sell under?

A. Yes, sir.

The mortgage referred to, as nearly as can be ascertained, is a chattel mortgage by J. O. Chase to O. M. Druse, of December 6, 1888, and the property described is one economizer, ten horse power boiler engine; seventeen Hereford calves from two weeks to six months old; one Hereford bull, Grove IV a 13733; one light bay mare, "Polly"; one black mare, "Dolly"; all on the farm of W. S. Hogaboom, in Fairmont township, to secure a note of $1,500, dated December 6, 1888, payable September 11, 1889, and is accompanied by the note described.

. The witness was asked to state the fair and reasonable

value of the house and lot he deeded to Chase and the bank, which was objected to, and the objection sustained. Yet the witness answered the question, and the same is in the bill of exceptions as follows:

At the time we made the trade I considered the property well worth $3,000. I would not have taken any less in money at that time, and I think, from the property around there, it would be shown that vacant lots brought from $1,600 to $1,800.

Q. Was a sale of the Driving Park stock finally consummated?

A. Yes, sir.

Q. Did he get the money?

A. Yes, sir, he got $5,000.

Q. What was the actual cash value of that Driving Park stock?

A. At that time I considered the stock cheap at $4,500. I could have sold it for that at any time.

It appears from the further examination of this witness that, being secretary of the Driving Park Association, which required that the officers should be stockholders, and several stockholders, as well as Chase, insisting that witness should continue a nominal stockholder in order to act as secretary, he did not transfer the stock, but retained it in his own name, to remain competent as a director, which was the reason the stock remained in his name, but the certificate of stock was assigned by witness and delivered to Chase.

It further appears from the testimony of the witness, and from that of John H. McClay, that his stock was subsequently bought by J. J. Imhoff, and $5,000 paid therefor by checks to J. O. Chase, which were paid, and the stock transferred to Imhoff.

The second and principal point in the case arises on this evidence, together with the evidence that the First National Bank of Fairmont became bankrupt and absolutely with-

out assets or means, leaving the title in the northwest quarter, section 32, township 8, range 2, and the north half southwest quarter of same section, in H. G. Bliss, or the B. & M. Railroad Company, to which does not definitely appear, and leaving the last payment due thereon still unpaid.

The contention of the defendant Druse is that the mortgages and notes were executed to him by J. O. Chase, in consideration of the prospective and ultimate failure of the bank to make the payments and carry out the contract with him, to make a good title to the land.   The contention of the plaintiff is that the contract between Druse and the bank, having been reduced to writing by Druse and his wife, the title to the lot being probably in her name, and by J. O. Chase as president on behalf of the bank, that the subject-matter of the contract could not afterwards constitute a lawful consideration for another contract between Druse and Chase, in his personal capacity, and that such would be the law of the case, especially under the statute of frauds, even were the evidence of the making of the contract in fact between Druse and Chase, as evidenced by one or all of the chattel mortgages or notes, ever so clear and satisfactory.   It is not necessary to enter upon a discussion of the law of the case, as it would be held to apply, had J. O. Chase, at the time of the making of the contract by the bank, or at a later date, have entered into a single, plain, and definite contract with Druse to indemnify him against any failure which might be made by the bank to carry out its part of the contract with him, expressing the consideration therefor plainly upon the face of the contract of indemnification.   I am not prepared to say that in such case the relationship of Chase to the bank as its president and principal owner, together with the inducements which he had held out to Druse to give the credit which he did to the bank, especially if we may fully credit the evidence of Druse as to the conversations between

30

them, about the time of making the trade between Druse and the bank, would not constitute a valid consideration for a promise on the part of Chase for such indemnity. But I am now considering the case on appeal. The district court has found that the chattel mortgage of Chase to Druse, dated September 11, 1888, and recorded September 12, following, and that dated September 6, 1888, and recorded December 7, following, being two of the chattel mortgages described by Druse in his testimony, were each without consideration, were fraudulent, and void as to the creditors of J. O. Chase.

It may be mentioned here that the mortgage of June 8, 1888, appears not to have been filed for record. Why it should have been preserved in the bill of exceptions is not apparent, but there can be no question, under the statute, of its being absolutely void.

As to the other two mortgages, these findings of the district court must stand, unless this court, from an examination of the evidence, shall find that it is by such evidence "made to appear on the part of such persons claiming under said mortgages that the same were made in good faith and without any intent to defraud any creditor" of Julius O. Chase. (See sec. 11, ch. 32, Comp. Stats.)

There having been no immediate delivery, followed by an actual and continuous change of possession of the chattel property described in the mortgages, the presumption of law is against their validity. This rule has often been applied by this and other courts. It would serve no necessary purpose to comment on the facts as developed by the testimony of Druse or as set forth in the pleadings, but it will be deemed sufficient to say that the transactions surrounding the mortgages are not of that plain, ingenuous character, which would be considered sufficient to remove the presumption of fraud from mortgages of personal property, without change of possession contemplated by the statute.

It appears from the pleadings and evidence that at the sale of the chattels which were the subject of this litigation upon two of the mortgages hereinbefore considered, and which sale was agreed to beforehand, by stipulation by the parties, one horse, "Bertie McGregor," was sold to defendant Druse at $160, and one horse, "Charlie," at $80. There was evidence by Druse, and witness in his own behalf, that he subsequently sold the horse "Bertie McGregor" for $600, taking a note with mortgage security for payment; and also had sold the horse "Charlie," for $275.

By the stipulation it will be seen that it was provided that any property bid off by Druse should be held by him on the same terms and condition as the notes and cash proceeds deposited in the bank. It is probable that the district court construed this provision to mean that in case Druse bid off the whole or any portion of the property, he should bid off the same in trust for the successful party in these proceedings whichsoever it might be. But if this was the construction to be placed on the stipulation, it will be observed that the court does not treat him as a trustee in the judgment, but as a debtor, for it will be remembered that from the evidence Druse had not converted the property into money but had sold it on credit, and taken a chattel mortgage as security. If treated as a trustee, he would have been required to turn over this security that it might have been placed with other notes for chattels sold on credit. But I do not agree to the construction supposed to have been placed upon the stipulation by the district court. I think the agreement recognizing the right of Druse to bid off the property at the sale, made any bid by him a purchase of the property, and that it was the amount of his bid for the property struck off to him that was to be held by him upon the same terms as that of the cash and notes in the bank.

The account of O. M. Druse, growing out of said sale,

upon the facts as stated in the petition will stand as follows :

### DEBIT.

To proceeds of sale as per statement in petition:
Articles of property sold for cash, as therein
stated .................................................. $136 75
Bay mare, to O. M. Druse............................ 100 00
Horse " Charlie," to O. M. Druse................... 80 00
Twelve colts, to O. M. Druse........................ 312 00
Four Hereford bulls, to O. M. Druse.............. 72 00
Horse " Bertie McGregor," to O. M. Druse....... 160 00

                                                    $860 75

### CREDIT.

By cash paid, taxes and expenses of sale.......... 220 19

                                                    $640 56

The judgment will therefore be modified, by changing the sum of $791.56, representing the judgment of the court below, for the plaintiff against the defendant Druse, reducing it to the sum of $640.56, as above stated, and so much of the said judgment as finds that the remainder of said property, twelve colts, one bay mare, and four Hereford bulls, are the property of Julius O. Chase, and orders the same to be sold by the sheriff of Fillmore county, is reversed, but, with the exceptions stated, the judgment of the district court is affirmed.

JUDGMENT ACCORDINGLY.

THE other judges concur.